**ROYCE HOMES, L.P., Appellant,**

v.

**Mitch HUMPHREY, Appellee.**

No. 09–06–295 CV.

Court of Appeals of Texas, Beaumont.

Submitted March 22, 2007.

Decided Jan. 3, 2008.

Shannon M. McAvoy, Kathleen Hopkins Alsina, Misty L. Pless, Patricia Hair, Phelps Dunbar LLP, Houston, for appellant.

Michael C. Beller, The Woodlands, for appellee.

Before GAULTNEY, KREGER, and HORTON, JJ.

**OPINION**

HOLLIS HORTON, Justice.

Mitch Humphrey sued Royce Homes, L.P. ("Royce") for damages to Humphrey's residence. Humphrey alleged that Royce wrongfully diverted the natural flow of surface waters during the construction of a new house on adjacent property and thus caused Humphrey's home to flood. The jury found in favor of Humphrey. The trial court entered judgment on the jury's verdict, awarding Humphrey $5,314.27 in cost-of-repair damages, and $20,000 in

damages for the lost market value of Humphrey's residence. Royce raises six appellate issues. We reverse and remand.

## BACKGROUND

During a February 2003 rainstorm, Humphrey noticed water entering his home near the back door. According to Humphrey, this was the first time his home had ever flooded. Humphrey testified that water from Royce's construction site flowed across his backyard and into his home. Humphrey and one of his neighbors testified that the fill dirt being used at Royce's construction site was red and that the water flooding Humphrey's home also was red. As a result of the incident, approximately one inch of water flooded all of Humphrey's home except for one bedroom.

## JURY'S FINDINGS

The jury answered two charge questions. Question 1 asked the jury if Royce "diverted the natural flow of surface water in a manner that proximately caused damage" to Humphrey's property. The jury answered "yes" to Question 1. In its entirety, Question 2 asked:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate [Mitch] Humphrey, for the damages, if any, caused by Royce Homes, L.P.'s conduct?

In arriving at an amount, if any, consider only the acts of Royce Homes, L.P. and do not include damages caused by any other source.

Consider the elements listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find.

a. the reasonable cost of the repairs necessary to restore the property to its condition immediately prior to the incident:

Answer in dollars and cents for damages, if any. (Jury's answer: $5,314.27).

b. the difference, if any, in the market value in Montgomery County, Texas, of Mitch Humphrey's Property, located at 11898 LaSalle Spring Court, Conroe, Texas, also known as Lot 39 of LaSalle Crossing, immediately before and immediately after the occurrence in question:

Answer in dollars and cents for damages, if any. (Jury's answer: $20,000.00).

## STANDARDS OF REVIEW FOR SUFFICIENCY CLAIMS

■ We review sufficiency issues under established standards. Challenges to the legal sufficiency of the evidence are either "no evidence" challenges or "matter of law" challenges, depending on which party has the burden of proof. *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.,* 766 S.W.2d 264, 275 (Tex.App.-Amarillo 1988, writ denied). If a party attacks the legal sufficiency of the evidence supporting an adverse finding on an issue for which it did not have the burden of proof, the party must show on appeal that no evidence supports the adverse finding. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983); *Christus St. Mary Hosp. v. O'Banion,* 227 S.W.3d 868, 873 (Tex.App.-Beaumont 2007, pet. denied). Evidence is legally sufficient if it "would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). In evaluating the evidence's legal sufficiency, "we credit evidence that supports the verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Kroger Tex. Ltd. P'ship v.*

*Suberu,* 216 S.W.3d 788, 793 (Tex.2006) (citing *City of Keller,* 168 S.W.3d at 827); *Am. Interstate Ins. Co. v. Hinson,* 172 S.W.3d 108, 114 (Tex.App.-Beaumont 2005, pet. denied). We sustain legal sufficiency challenges "when, among other things, the evidence offered to establish a vital fact does not exceed a scintilla." *Suberu,* 216 S.W.3d at 793. "Evidence does not exceed a scintilla if it is 'so weak as to do no more than create a mere surmise or suspicion' that the fact exists." *Id.* (quoting *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 601 (Tex.2004)).

In determining the factual sufficiency of the evidence to support a jury's finding, courts of appeals must weigh all the evidence, both for and against the finding. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 242 (Tex.2001). In reviewing a factual sufficiency challenge to a finding for which the appellee had the burden of proof, we "set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

## MEASURE OF DAMAGES

### A. Diminution in Value

In issue one, Royce claims the trial court erred by submitting the diminution-in-value question to the jury (Question 2(b)). Royce claims that Humphrey is not entitled to damages for diminution in the market value of his home because the underlying injury was temporary rather than permanent, since Humphrey's home flooded only once. Humphrey, however, contends that his home suffered permanent damage because of a "stigma" that attaches to flooded homes.

At the charge conference, Royce objected to submission of Question 2(b) as follows: "There is no evidence that the event that caused this injury was permanent.

And, instead, all the evidence demonstrates that it was caused by the rain which is [an] intermittent type of injury and ... that is temporary damages for which stigma damages are not available." Royce did not request the trial court to submit a jury question on whether the damage was temporary, and neither party requested instructions or definitions regarding the terms "temporary" or "permanent." The trial court determined there was sufficient evidence to submit Question 2(b) to the jury.

Humphrey produced a real estate appraiser, Ray Steinmann, who testified that flooded homes, even when the flood occurs only once, generally suffer a diminished market value. Steinmann explained that he had significant experience dealing with flooded properties in his forty-year career as a real estate appraiser, and he testified that, in his opinion, the 2003 flood would diminish the value of Humphrey's home.

To support his argument that his stigma damages are permanent, Humphrey relies on Steinmann's expert testimony. Steinmann testified that stigmas lower the value of property and that examples of stigmas include properties affected by a flood, a fire, or a violent death. According to Steinmann, one Montgomery County subdivision still suffers from stigma damage even though its drainage problems were cured over twenty years ago and never recurred. Steinmann further testified that he had dealt with over a hundred properties that incurred flood damage. Steinmann foreclosed on some of the properties and then resold them. He testified that he worked for a bank for twenty-three years and handled the bank's foreclosures. Steinmann asserted that this experience provided him with "good working knowledge of what the market will pay for houses that

have flooded." He conceded that he did not use flooded properties as comparables. Instead, he determined Humphrey's property value as if it had not flooded and then estimated a percentage to deduct for the stigma he attributed to flood damage.

Royce further contends there are no published cases allowing "stigma damage" for actions brought under section 11.086 of the Texas Water Code.[1] Our research has found no section 11.086 cases that either allow or disallow "stigma damages." But in other contexts, several Texas cases have allowed stigma-damage awards in real estate cases. See *Country Village Homes, Inc. v. Patterson*, 236 S.W.3d 413, 443–44 (Tex.App.-Houston [1st Dist.] 2007, pet. filed) (construction defects); *Perry Homes v. Alwattari*, 33 S.W.3d 376, 385–86 (Tex. App.-Fort Worth 2000, pet. denied) (defective foundation); *Smith v. Levine*, 911 S.W.2d 427, 434 (Tex.App.-San Antonio 1995, writ denied) (defective foundation); *Terminix Int'l v. Lucci*, 670 S.W.2d 657 (Tex.App.-San Antonio 1984, writ ref'd n.r.e.) (termite damage).

Matthew Deal, Royce's real estate expert, explained that stigma damages create "an adverse public perception on property. Any outside influence that's affected property, that's permanent ... stigma damage." According to Deal, the appropriate appraisal method for determining stigma damage is "a paired sales analysis." Deal explained the method as an attempt "to find damages caused by a specific outside influence[.]" Under a paired-sales analysis, an appraiser should compare sales of property involving the same or similar problem to sales of property that are otherwise similar but without the problem. As examples, Deal cited the results of studies involving homes with specific problems: slab defects, polybutylene plumbing defects, and exposure to carbon black. Deal testified that the paired-sales analyses showed no market-value diminution for homes with slab or polybutylene plumbing defects after the problems were repaired. The homes exposed to carbon black suffered permanent loss because the problem could not be repaired.

As to Steinmann's analysis, Deal concluded that Steinmann did not properly determine if there would be permanent damage to Humphrey's home after repairs or properly appraise the amount of damage. Deal testified that an appraiser could not determine the existence or amount of stigma damage without conducting a paired analysis and further stated that such determinations required studies of the market, the property, and the effects on the property's value. Deal admittedly did not appraise Humphrey's property or conduct a paired analysis to determine the flood's effect on the property. Deal's testimony further reflects that in his sixteen years of real estate appraising, he had appraised two residences in Montgomery County, Texas, and neither involved flood damage. Finally, Deal agreed that he could not be one hundred percent confident that Humphrey's flooding problem had been corrected.

---

1. In pertinent part, section 11.086 ("Overflow Caused by Diversion of Water") provides as follows:

   (a) No person may divert or impound the natural flow of surface waters in this state, or permit a diversion or impounding by him to continue, in a manner that damages the property of another by the overflow of the water diverted or impounded.

   (b) A person whose property is injured by an overflow of water caused by an unlawful diversion or impounding has remedies at law and in equity and may recover damages occasioned by the overflow.

   TEX. WATER CODE ANN. § 11.086 (Vernon 2000).

Texas law explains how to determine whether a plaintiff's injury is permanent. In *Schneider Nat'l Carriers, Inc. v. Bates,* the Texas Supreme Court conducted a comprehensive analysis of the distinctions between temporary and permanent nuisances. 147 S.W.3d 264, 269–83 (Tex. 2004). The *Bates* Court held that "a permanent nuisance may be established by showing that either the plaintiff's injuries or the defendant's operations are permanent." *Id.* at 283. Thus, on the record properly before us, we conclude that Steinmann's testimony is more than a scintilla of evidence that would enable reasonable and fair-minded persons to find that Humphrey's home suffered a diminished market value as a result of the flood and that these damages were permanent. *See Suberu,* 216 S.W.3d at 793; *City of Keller,* 168 S.W.3d at 827. We overrule issue one.

B. Reasonable Cost of Repair

■ Royce's issue two, in part, attacks the legal sufficiency of the evidence supporting the jury's finding that $5,314.27 was a reasonable and necessary cost for repairs to Humphrey's home. (Question 2(a)). With respect to repairs, Humphrey testified that he replaced the bottom of the kitchen cabinets, removed all of the carpet and padding throughout the residence, and removed the vinyl flooring in the kitchen. He also did all of the "clean up" work in the residence. Humphrey also identified various receipts related to materials he purchased for the repairs. Plaintiff's exhibit 14, which was admitted at trial and is part of the appellate record, shows the total cost of repair to be $4,914.27. Without objection, Humphrey also testified that $400.00 was the cost of his labor and materials for remedial measures to prevent future flooding of his home. The jury subsequently determined that the reasonable cost of repairs was $5,314.27.

Humphrey's testimony and his exhibits constitute legally sufficient evidence to support the jury's cost-of-repairs finding. *See City of Keller,* 168 S.W.3d at 827. Based on the evidence in this record, reasonable persons could reach the jury's verdict on the property's cost-of-repair. *See id.* We overrule issue two as it relates to legal sufficiency.

## AMOUNT OF THE HOME'S DIMINISHED MARKET VALUE

■ Royce presents its arguments on issues three and four together. In issue three, Royce complains that the evidence is legally insufficient to support the jury's finding that Humphrey's home lost $20,000.00 in market value as a result of the flood. In issue four, Royce complains that the trial court erred in admitting the testimony of Humphrey's real estate appraiser.

As evidence of his home's diminished market value, Humphrey offered his own testimony and that of his expert, Steinmann, who testified that Humphrey's home diminished in market value because of the "stigma" it suffered from the flooding. Royce contends that Steinmann's testimony was unreliable and argues that Steinmann's opinion is no evidence because it is no more than speculation and supposition. With respect to Steinmann's testimony that the flood caused Humphrey's home to suffer a twenty-percent reduction in its market value, we agree with Royce. We also agree that Humphrey's testimony regarding the percentage he attributed to the home's diminished market value was speculative.

Recent Texas Supreme Court opinions stress the necessity for expert opinions to rely on sufficient data and proper methodology. *See Volkswagen of Am., Inc. v. Ramirez,* 159 S.W.3d 897, 905–06 (Tex.

2004); *Kerr–McGee Corp. v. Helton*, 133 S.W.3d 245, 257 (Tex.2004). As the *Ramirez* Court explained: "An expert's bare opinion will not suffice." 159 S.W.3d at 906. An expert's "reliance on the 'laws of physics', without more, is an insufficient explanation." *Id.* Rather, an expert must explain how his research or tests support his conclusion. *Id.* (rejecting expert's theory that was not supported by objective scientific analysis but instead was based on the expert's subjective interpretation of the facts). In *Helton*, the expert offered data from existing wells to establish production of a hypothetical well. 133 S.W.3d at 258. The *Helton* Court, however, found that even if the expert's data was "generally relied on by petroleum engineers to estimate production," and even if the expert's underlying facts and data were accurate, there was "too great an analytical gap" between the data and the expert's conclusions for the expert's testimony to be reliable. *Id.* The *Helton* expert did not explain how he used the data to reach his conclusions and "failed to sufficiently explain why known differences … would not result in different production rates." *Id.*

Steinmann testified that "stigmas," such as floods, fires, or violent deaths, lower property values. Steinmann testified that he had dealt with over a hundred properties that incurred flood damage. Steinmann asserted that this experience provided him with "good working knowledge of what the market will pay for houses that have flooded." He conceded that he did not use other flooded properties as comparables. Instead, he determined the value of Humphrey's home as if it had not flooded and then estimated a percentage to deduct for stigma damage. When asked how he determined the reduction in value, Steinmann testified:

> The difference of about 20 percent in value is the stigma that is attached to a flooding property that has flooded once or minimum of, say, twice in a local drainage situation, most likely can be cured. But the stigma stays with the house. It has to always be reported that the house has had water when you are trying to sell it in a market.

Steinmann conceded that he did not include any data with his report to support his twenty percent deduction. Furthermore, during his testimony, Steinmann did not identify any of the properties that he claimed had suffered similar flood damage. Rather, Steinmann stated that his opinion was based on "much conversation, particularly, over the years with realtors that sell these properties" and on his experience in selling flooded properties. When asked whether the comparables he used to establish market value had suffered flooding, Steinmann agreed that "water has not gotten in the comparables." Steinmann further testified that he had experience comparing sales of flooded homes, which were similar to Humphrey's, with houses that had not flooded. Steinmann testified that he had made that type of comparison regarding Humphrey's home, but he had nothing "in writing" that showed the comparison. Steinmann explained how he arrived at the percentage as follows:

> [Defense Counsel]: And this 20 percent figure, this is something that is just based upon your general experience; is it not?
>
> [Steinmann]: With a lot of hard knocks, yes, ma'am.
>
> [Defense Counsel]: And basically, this is something that we are to rely on because you say it, without any objective way that we can prove up or—or test your opinion?
>
> [Steinmann]: Last 30 years it has been accepted, yes, ma'am.

Steinmann conceded that diminished value is difficult to prove when the owner has not tried to sell the house.

To be admitted into evidence, a real estate appraiser's expert opinion must be relevant and reliable. *Guadalupe–Blanco River Auth. v. Kraft*, 77 S.W.3d 805, 807 (Tex.2002) (citing TEX.R. EVID. 702; *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 726 (Tex.1998)). Generally, when an appraiser's testimony is based on a comparable sales analysis, as is Steinmann's, the sales must be comparable to the property in question. *See Kraft*, 77 S.W.3d at 808.

In this case, Steinmann did not base his opinion of the value of Humphrey's home on properties that had suffered similar flood damage. Instead, the comparables in Steinmann's report were non-flooded properties. Then, he attempted to correct for the hypothetical home by applying a twenty-percent factor, but his testimony does not sufficiently explain why an adjustment of twenty percent is justified. A court is not required to rely on an adjustment factor when the expert does not sufficiently support his analysis to support the reduction's application to the property at issue. *See Helton*, 133 S.W.3d at 258.

Like the expert's opinion in *Helton*, there is "too great an analytical gap" between the data Steinmann may have used and his conclusion as to the percentage of the home's lost market value. *See id.* Moreover, Steinmann failed to demonstrate that he used a comparable sales approach in establishing the value of flood-damaged houses. Because Steinmann did not identify the alleged flooded houses he used as comparables, we are unable to determine whether these houses were, or were not, comparable to Humphrey's. Without knowing how Steinmann used other properties to reach his conclusions, we cannot determine whether his decision to apply a twenty-percent reduction to the market value of Humphrey's home was reliable. *See id.* Thus, we agree with Royce that the trial court should not have admitted Steinmann's testimony that Humphrey's home suffered a twenty-percent reduction in market value.[2] *See id.*

Humphrey also testified about the reduced value of his property. He stated that the value of his property was $100,000.00 before the flood. When asked what the value of the property was "after the flood, [the] same day," Humphrey responded that the property was worth $70,000.00. Under cross-examination, however, Humphrey undercut his own testimony by conceding that he calculated the post-flood value of his home by "pulling [it] out of the air[.]"

When the owner is familiar with his property's value, "the owner of

---

2. Matthew Deal, Royce's expert, testified that the appropriate appraisal method for determining stigma damage is "a paired sales analysis." Deal explained that an appraiser should compare sales of property involving the same or similar problem to sales of property that do not have the problem but are otherwise similar. As to Steinmann's analysis, Deal concluded that Steinmann did not properly determine if there would be permanent damage to Humphrey's home after repairs or what the amount of the damage would be. Deal concluded that an appraiser could not ascertain the existence or amount of stigma damage without conducting a paired analysis and further stated that such determinations required studies of the market, the property, and the effects on property's value. While we agree that Steinmann did not sufficiently explain the basis of his opinion regarding the amount of Humphrey's claim for diminished market value, as explained in response to Royce's first issue, we disagree with Deal's contention that Steinmann was not qualified to express an opinion about whether a home has suffered a diminished market value as explained with respect to Royce's issue one.

the property can testify to its market value, even if he could not qualify to testify about the value of like property belonging to someone else." *Porras v. Craig*, 675 S.W.2d 503, 504 (Tex.1984). However, Humphrey's estimate of his damages is purely speculative. *See Lefton v. Griffith*, 136 S.W.3d 271, 277 (Tex.App.-San Antonio 2004, no pet.). " 'There can be no recovery for damages which are speculative or conjectural.' " *Id.* (quoting *Roberts v. U.S. Home Corp.*, 694 S.W.2d 129, 135 (Tex. App.-San Antonio 1985, no writ)).

Thus, we find Humphrey's evidence supporting an award of $20,000 in diminished value to be legally insufficient, and we sustain issue three on that basis. We further find that the trial court abused its discretion in admitting Steinmann's testimony that the home suffered a twenty-percent reduction in its market value, and therefore, we sustain issue four.

### REMEDY

■ Royce contends that we should reverse the trial court's judgment in part and render the judgment that the trial court should have rendered. *See* Tex. R.App. P. 43.2(c). We decline Royce's request for rendition, however, as explained below.

In this case, Steinmann testified that flooding generally stigmatizes a home regardless of repairs. During Steinmann's cross-examination, Royce's attorney asked:

[Defense Counsel]: If there has ever been a flood, even if the condition that caused the flood, the drainage problem that caused the water to seep in has been corrected, there is always going to be stigma; that's your testimony?

. . .

[Steinmann]: I don't know of any houses that have a stigma that's been corrected that's reduced the stigma or may have

reduced the stigma, but never went away.

Royce lodged no objection to this testimony.

In addition, Steinmann's testimony showed that he had been an appraiser for over forty years, had thirty-five years' experience appraising properties in Montgomery County, and had dealt with over one hundred properties that had flooded. In summary, the record contains a reliable opinion that a flooded home suffers a diminished market value. While the cause of the flood was disputed, it was not disputed that Humphrey's house flooded. The jury resolved the fact issues as to the cause of the flood against Royce. Thus, there is more than a scintilla of evidence that the flood caused Humphrey's home to suffer a diminished market value, although the testimony failed to establish the amount of damages with the precision required by law.

■ Appellate courts may remand a case for a new trial in the interests of justice and have broad discretion to do so. *See* Tex.R.App. P. 43.3(b); *Fanning v. Fanning*, 847 S.W.2d 225, 226 (Tex.1993). Appellate courts have reversed for a new trial when, among other circumstances, the plaintiff failed to show damages with reasonable certainty, but the interests of justice required that the plaintiff be given an opportunity to establish the proper measure of damages. *See Ford Motor Co. v. Cooper*, 125 S.W.3d 794, 804–05 (Tex.App.-Texarkana 2004, no pet.) (citing *Porras*, 675 S.W.2d at 506; *Varel Mfg. Co. v. Acetylene Oxygen Co.*, 990 S.W.2d 486, 500 (Tex.App.-Corpus Christi 1999, no pet.); *Williams v. Gaines*, 943 S.W.2d 185, 193 (Tex.App.-Amarillo 1997, writ denied); *A.B.F. Freight Sys., Inc. v. Austrian Import Serv., Inc.*, 798 S.W.2d 606, 616 (Tex. App.-Dallas 1990, writ denied); *Powell–Buick–Pontiac GMC, Inc. v. Bowers*, 718

S.W.2d 12, 14 (Tex.App.-Tyler 1986, writ ref'd n.r.e.)).

■■■ Under the circumstances presented here, the evidence established permanent damages but was insufficient as to the precise amount. When damages are unliquidated and the defendant contests liability, as is the case here, the appropriate remedy is to remand the entire cause as to both liability and damages. *See* TEX. R.APP. P. 44.1(b); *Estrada v. Dillon,* 44 S.W.3d 558, 560 (Tex.2001); *Redman Homes, Inc. v. Ivy,* 920 S.W.2d 664, 669 (Tex.1996); *Royal Maccabees Life Ins. Co. v. James,* 146 S.W.3d 340, 351–52 (Tex. App.-Dallas 2004, pet. denied). We conclude that the appropriate remedy here is to reverse and remand the case for a new trial rather than to render judgment limiting Humphrey's recovery to cost of repairs. *See Kraft,* 77 S.W.3d at 810 (reversing and remanding case to the trial court for further proceedings when appraisal testimony was not shown to be reliable).[3]

### Double Recovery

In issue five, Royce contends that the trial court erroneously awarded a double recovery to Humphrey by allowing him to recover damages under both Questions 2(a) and 2(b). In answering 2(a), the jury found that $5,314.27 was "the reasonable cost of the repairs necessary to restore the property to its condition immediately prior to the incident." In answering 2(b), the jury found that $20,000 was the difference in the market value of Humphrey's property, immediately before and immediately after the occurrence in question.

Royce contends that the jury instruction contained in 2(b) is deficient. Question 2(b) instructs the jury to find: "the difference, if any, in the market value in Montgomery County, Texas, of Mitch Humphrey's Property, located at 11898 LaSalle Spring Court, Conroe, Texas, also known as Lot 39 of LaSalle Crossing, immediately before and immediately after the occurrence in question[.]" Royce argues that the instruction explicitly required the jury to consider the difference in the property's value "immediately before" and "immediately after" the occurrence, and, in so doing, the instruction required the jury to consider the diminution value of the property before Humphrey repaired it. Because the jury also found that Humphrey should recover his costs of repair, Royce contends the trial court awarded Humphrey a double recovery when it awarded cost of repair damages along with pre-repair diminution damages.

■■■ Humphrey, however, contends that Royce waived any error regarding a double recovery because Royce did not object to the form of the damages question, and did not request a special instruction calculated to prevent the jury from allowing a double recovery. We disagree with Humphrey's contention that Royce waived its objection.

While Royce did not object at trial to submission of question 2(b) (diminished market value) on the grounds of double recovery, Royce included this objection in its motion for new trial. As one of six complaints in the motion, Royce asserted

---

3. Although we cannot determine from the Supreme Court's opinion in *Kraft* what relief the appellant requested, it appears that he asked the Court of Appeals to render judgment in an amount less than the damages awarded by the jury. *See Guadalupe–Blanco River Auth. v. Kraft,* 39 S.W.3d 264, 265 (Tex.App.-Austin 2001), *rev'd,* 77 S.W.3d 805 (Tex.2002). Further, it appears from the lower court's opinion that the real estate appraiser was the landowner's only witness. Because the situation here is similar, we find the same remedy, a remand, to be appropriate.

that the trial court erred in awarding damages under both Question 2(a) and 2(b) because the award constituted a double recovery. The trial court overruled Royce's motion.

The Texas Supreme Court has determined that a complaining party is "not required to object to the submission of more than one acceptable measure of damages to preserve error on the issue of actual damages double recovery." *Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998). The Court noted that parties are "generally entitled to sue and to seek damages on alternative theories, so such an objection would have been improper." *Id.* (citing *Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361, 367 (Tex.1987)).

■■■ Further, the Texas Rules of Appellate Procedure provide that a party properly preserves error if the record shows that (a) the party presented its complaint to the trial court by a timely request, objection, or motion stating the specific grounds for the desired ruling if the specific grounds are not apparent from the context; and (b) the trial court ruled on the request. Tex.R.App. P. 33.1(a). "To preserve a complaint of error in a judgment, a party must inform the trial court of its objection by a motion to amend or correct the judgment, a motion for new trial, or some other similar method." *Dal–Chrome Co. v. Brenntag Sw., Inc.*, 183 S.W.3d 133, 144 (Tex.App.-Dallas 2006, no pet).

In this case, we find that Royce preserved error on its double recovery complaint by including it in the motion for new trial. As a result, we need not reach the question of whether Royce could raise a complaint about a judgment allowing a double recovery without first objecting at some stage in the trial court. Therefore, we consider the merits of Royce's double recovery issue.

■■■ Texas law is clear: no double recoveries are allowed. *Parkway Co. v. Woodruff,* 901 S.W.2d 434, 441 (Tex.1995). But, under certain circumstances, a plaintiff may recover for both diminution in value and cost of repairs. *See Ludt v. McCollum,* 762 S.W.2d 575, 576 (Tex.1988). The *Ludt* Court found that the plaintiff did not submit and obtain jury findings sufficient to show the home's permanent reduction in value after it was repaired. *Id.* As the Court observed, a plaintiff may "recover both measures of damages if he [has] requested issues that would have made it clear that he was asking for the amount of reduction in value after the repairs were made." *Id.*

In this case, issue 2(a) asked the jury to determine the reasonable cost of repairs necessary to restore Humphrey's property to its pre-occurrence condition. The jury determined the repair costs to be $5,314.27. Issue 2(b) asked the jury to determine the difference in market value "immediately before and immediately after" the incident. The charge does not define "immediately," but as used in the context of time, Webster's dictionary provides the following definition for the term: "without interval of time: without delay: STRAIGHTWAY. . . ." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1129 (2002). Thus, Question 2(b) required the jury to determine the diminished value of Humphrey's home before its repair, i.e., without any interval of time after the incident.

■■■ Humphrey argues that because his expert appraised the property in its repaired state and concluded that the property had declined in value by $20,000, there is no double recovery in the jury's diminution finding. Essentially, Humphrey's argument requires us to assume

the jury ignored the trial court's instruction to determine the pre-repair diminution in the home's value. Unless the record clearly demonstrates otherwise, we must presume the jury followed the court's instructions on damages. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 771 (Tex.2003).

■ It is not clear how the jury reconciled the trial court's instruction to measure the damages to the property at the time of the occurrence with another charge instruction, namely that the jury must not include damages for one element in any other element.[4] Humphrey had the burden to request issues that make it clear to the jury that he sought a finding on post-repair diminution of value. *See Ludt*, 762 S.W.2d at 576. He did not do so; instead, he requested a charge that allowed the jury to make findings on both repair costs and pre-repair diminution, contrary to *Ludt. See id.* In its motion for new trial, Royce made the trial court aware of this problem, but the court denied the motion. When the question submitted to the jury allows the jury to consider the cost of repairs in determining the difference in market value, entering a judgment awarding both the difference in market value after the occurrence and for costs of repairs would allow a double recovery. Because a double recovery is not permissible, we sustain issue five.

■ When possible, an appellate court should reform a trial court's judgment that allows a double recovery by awarding the plaintiff the higher of the two possible recoveries. *See Woodruff,* 901 S.W.2d at 441. In this case, we are unable to do so as explained in our disposition of issues three and four.

## Proximate Cause

■ Finally, issue six contends, in part, that there was legally insufficient evidence to support the jury's finding in Question 1 that Royce diverted water in a manner that proximately caused damage to Humphrey's home. With respect to causation, Humphrey testified that he saw water flowing from Royce's lot into his home. Dan Wilds, a civil engineer employed by Montgomery County, testified that the Royce slab caused an obstruction affecting the water flow and the incident could have been avoided if Royce had provided proper drainage before it began construction. We find this evidence would allow reasonable persons to reach the jury's verdict on proximate cause. *See City of Keller,* 168 S.W.3d at 827. The evidence, thus, is legally sufficient to support the jury's finding that Royce diverted the natural flow of surface water in a manner that proximately caused damage to Humphrey's property. *See id.* We overrule issue six.[5]

Having sustained issues three and four, we reverse the trial court's judgment and remand this cause for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

---

**4.** Question 2 directed the jury to consider "reasonable cost of repairs" and "diminution of market value" separately and further instructed the jury as follows: *"Do not include damages for one element in any other element."* (emphasis added) Question 2 further directed the jury to determine the market value of Humphrey's home *"immediately be-*

*fore and immediately after the occurrence in question."* (emphasis added)

**5.** We need not consider Royce's factual sufficiency arguments presented in issues two and six because a favorable disposition on these arguments would result in no greater relief. *See* Tex.R.App. P. 47.1.