**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-16-00153-CV**
_____

**TRAVIS SPAULDING, Appellant**

**V.**

**TROY SUMRALL, Appellee**

**On Appeal from the County Court at Law No. 1**
**Jefferson County, Texas**
**Trial Cause No. 118028**

**MEMORANDUM OPINION**

The main issue we are required to consider in resolving this appeal is whether lay testimony about the value of a classic car, which was acquired by trade, offers any probative value to prove what a car like the one the plaintiff claimed he had acquired in the trade should have been worth. The trial court employed a benefit-of-the-bargain measure of damages when awarding damages, and based its award on

1

the plaintiff's testimony about what a car like the one he believed he acquired in the trade should have been worth.

We conclude the testimony before the trial court regarding the value of the classic car was incompetent to prove the car's market value on the date the trade occurred. Because the plaintiff's lay opinion about the car's value was the only evidence admitted in the trial regarding the car's value, we conclude the plaintiff failed to meet his burden to establish that he suffered any damages due to the trade he agreed to make to acquire the classic car. Accordingly, we reverse the trial court's judgment and render a take-nothing judgment in the defendant's favor.

Background

This appeal stems from a dispute between the two parties who made a trade involving a 1974 Corvette Stingray. In the trade, the plaintiff exchanged his 25-foot power catamaran in return for the defendant's foreign sports car, a 1974 Corvette Stingray, and $20,000. In the suit, the plaintiff claimed that the Stingray had been represented as having all original equipment, including a 454-cubic-inch engine, when the car had been modified with an aftermarket 454-cubic-inch engine that replaced the car's original 350-cubic-inch engine.

The evidence from the trial shows Troy Sumrall purchased the catamaran for $55,000 from a bankruptcy estate. After Sumrall acquired the catamaran, he

2

advertised it for sale on the internet for $65,000. Sumrall's listing indicated that he would consider both cash proposals and trades. When Travis Spaulding, the defendant in the proceedings in the trial court, learned the catamaran was for sale, he called Sumrall and asked if he could look at it. Eventually, Spaulding traveled from his home in Blanco County to Sumrall's home in Jefferson County to examine the catamaran. After discussing the amount of cash that Sumrall wanted for his catamaran, the parties settled upon an agreement that involved a trade. The agreement the parties made required Sumrall to convey his catamaran to Spaulding for Spaulding's foreign sports car and a fishing boat, and required Spaulding to give Sumrall between $20,000 to $25,000 in cash, with the understanding that the exact amount of cash that would change hands would be decided after Sumrall had examined Spaulding's sports car and fishing boat, items that were located at Spaulding's home in Blanco County.

Subsequently, Sumrall took his catamaran to Blanco County where he inspected Spaulding's fishing boat and sports car. During the trial, Sumrall testified that his inspection revealed that the fishing boat was in poor condition, which led him to decide that he did not want it. After looking at Spaulding's fishing boat, Sumrall inspected the sports car, and he determined that it was in a condition he found acceptable for the purposes of the trade.

As the agreement was about to fail due to the condition of Spaulding's fishing boat, Spaulding offered to substitute a 1974 Corvette Stingray that he and his wife owned in the transaction as a replacement for trading his fishing boat. During the trial, both parties agreed that Spaulding first mentioned the Stingray when Spaulding was in Jefferson County, and that the Stingray was not included in the trade that the parties had settled upon when they made the agreement they reached in Jefferson County regarding the trade. Nonetheless, according to Sumrall, when Spaulding first mentioned that he owned the Stingray while the parties were in Jefferson County, Spaulding said the car was "all original," and that it had a factory installed 454-cubic-inch engine. After Sumrall went to Blanco County and Spaulding offered to substitute the Stingray to save the parties' trade, Sumrall agreed to an exchange that required him to exchange the catamaran for Spaulding's Stingray, a foreign sports car, and $20,000 in cash.

After acquiring the Stingray, Sumrall offered to sell it on the internet for $32,000. During the trial, Sumrall testified that he determined what he should ask for the Stingray after reviewing advertised prices for Stingrays like the one he believed he had acquired from Spaulding. According to Sumrall, the Stingray was listed as having "all original" equipment in the listing that he used to advertise the car for sale. Sumrall received several inquiries in response to the listing for the

4

Stingray, but got no offers. According to Sumrall, one of the individuals who contacted him informed him that the Stingray had originally been equipped with a 350-cubic-inch engine, and he also learned from the same caller that the engine now in the car was not the engine the car came with when it was originally sold. Sumrall explained that the caller told him that this information could be determined by using the car's vehicle identification number (VIN),[1] from information that was widely available.

After learning that the Stingray was not equipped with its original engine, Sumrall changed his listing on the Stingray, disclosing that the Stingray was equipped with an aftermarket, 454-cubic-inch engine and aftermarket badges. Sumrall ultimately sold the Stingray for $14,000, $18,000 less than the price he originally asked for the car when it was first listed for sale.

In February 2011, Sumrall sued Spaulding in Jefferson County alleging that Spaulding had misrepresented the car as being equipped with all original equipment

---

[1] The testimony indicates that before Spaulding obtained the Stingray, the engine, car badges, and emissions sticker had been replaced with aftermarket equipment to reflect that the Stingray was equipped with a 454-cubic-inch engine. The testimony also indicates that a person who knew about classic cars could determine by examining the car's VIN whether the currently installed engine was the one that was originally installed in the car when it came out of the factory.

when it was not. The theories in Sumrall's petition include claims for breach of contract, deceptive trade practices, negligent misrepresentation, and fraud.

Spaulding filed a motion asking that the case be transferred to Blanco County in response to Sumrall's suit. According to Spaulding's motion, the agreement for the Stingray occurred in Blanco County, not Jefferson County, and he claimed that Jefferson County was not a county of proper venue for the suit. When Sumrall responded to Spaulding's motion, he alleged that "[w]hile it is true that [he] traveled to Spaulding's residence to view the assets,…the terms and conditions of the agreement…[were] negotiated…in Jefferson County, Texas."

The trial court conducted a hearing on Spaulding's motion to transfer venue in August 2012. One week later, the motion was denied by written order. Subsequently, Spaulding amended his answer and filed a counterclaim against Sumrall, alleging that Sumrall had falsely represented that the catamaran had "the protection of the original manufacturer's warranty."

The case went to trial in February 2013. Approximately six weeks later, the trial court sent the parties a letter advising that the court had decided to rule in Sumrall's favor, to award Sumrall damages of $18,000, and to award Sumrall $8,500

in attorney's fees.[2] For reasons that are not apparent from the record, approximately three years passed from the date the trial court sent the parties the letter advising them that it was finding for Sumrall and the date the trial court signed the final judgment. When the judgment issued, the trial court awarded Sumrall $18,000 in damages and $8,500 in attorney's fees. The judgment reflects that the court denied Spaulding any relief on his counterclaim.

Following the trial, Sumrall and Spaulding both asked that the trial court reduce its findings of fact and conclusions of law to writing. When the trial court reduced its findings to writing, the court made it clear that Sumrall had prevailed solely on his deceptive trade practices claim. While Spaulding filed a motion for new trial, the trial court never signed a written order overruling the motion; therefore, that motion was deemed to have been overruled by operation of law. *See* Tex. R. Civ. P. 320, 329b(c). Thereafter, Spaulding appealed.

Issues

In three appellate issues, Spaulding argues (1) the trial court erred by denying his motion to transfer venue, (2) insufficient evidence was admitted during the bench trial the trial court conducted to resolve the parties' dispute to support the trial court's

---

[2] The trial court's letter is silent regarding the legal theory on which it decided to rule in Sumrall's favor. Additionally, the letter contains no information regarding the trial court's ruling on Spaulding's counterclaim.

damages award of $18,000, and (3) the overwhelming great weight and preponderance of the evidence introduced during the trial is inconsistent with the trial court's ruling on Spaulding's counterclaim.

## Venue

In his first issue, Spaulding argues that Sumrall failed to prove that Jefferson County was a county of proper venue for the suit. According to Spaulding, the evidence from the trial shows that the Stingray's involvement in the trade arose in Blanco County, not Jefferson County. Spaulding suggests the evidence reflects that a "substantial part of the events giving rise to the lawsuit" occurred in Blanco County, which is the county where he asked the trial court to transfer Sumrall's lawsuit. According to Spaulding, Blanco County was a county of proper venue for the suit pursuant to section 15.002(a)(1) of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 15.002(a)(1) (West 2017) (providing, in pertinent part, that "all lawsuits shall be brought: (1) in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred"). Spaulding concludes that because Sumrall failed to establish that venue for the suit was proper in Jefferson County, the judgment must be reversed and the case transferred to Blanco County for another trial.

Under Texas law, the plaintiff can file suit in any county of proper venue. *See Wilson v. Tex. Parks & Wildlife Dep't*, 886 S.W.2d 259, 260 (Tex. 1994). In this case, Sumrall and Spaulding both agree that section 15.002 of the Texas Civil Practice and Remedies Code provides the venue rule that controlled venue for Sumrall's lawsuit. Therefore, to succeed on his motion to transfer venue, Spaulding must establish in the appeal that no substantial part of the events giving rise to Sumrall's claims occurred in Jefferson County, and he cannot satisfy that burden merely by showing that substantial parts of the events or omissions that gave rise to the suit also occurred in Blanco County. *See Velasco v. Tex. Kenworth Co.*, 144 S.W.3d 632, 635 (Tex. App.—Dallas 2004, pet. denied).

When evaluating a trial court's venue ruling, we look to the record as a whole, and we review all of the evidence that was before the trial court pertinent to the trial court's venue ruling in the light that favors the trial court's ruling on the motion to transfer. *See Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 758 (Tex. 1993). In this case, we must decide whether the evidence before the trial court supports the trial court's ruling that a substantial part of the events or omissions giving rise to Sumrall's claim occurred in Jefferson County. *See* Tex. Civ. Prac. & Rem. Code Ann. § 15.002(a)(1). Spaulding characterizes the evidence about the discussions about his Stingray that occurred in Jefferson County as "nothing more than small-talk[.]" Nonetheless, the

9

trial court could have reasonably concluded from the evidence that Spaulding misrepresented the qualities of the Stingray when the parties were negotiating in Jefferson County even if the Stingray was not included in the agreement the parties reached there, and that the misrepresentation about the Stingray's qualities in Jefferson County were material to the trade the parties ultimately made when they were in Blanco County.

Essentially, the trial court could have viewed the trade as involving one agreement that was later modified to include the Stingray in Blanco County. The trial court was not required to view the trade as two completely separate deals, one made in Jefferson County and a second that was made in Blanco County. The trial court's view of the transaction as one agreement that was modified in Blanco County would not have been unreasonable since Spaulding never pleaded and never argued that a novation occurred in Blanco County regarding the agreement the parties reached while negotiating in Jefferson County. *See Honeycutt v. Billingsley*, 992 S.W.2d 570, 577 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (indicating that novation is an affirmative defense); *see also* Tex. R. Civ. P. 94 (requiring that a party affirmatively set forth certain defenses, including any "matter constituting an avoidance or affirmative defense").

"Novation is the substitution of a new agreement between the same parties or the substitution of a new party on an existing agreement." *New York Party Shuttle, LLC v. Bilello*, 414 S.W.3d 206, 214 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (citing *Honeycutt*, 992 S.W.2d at 576). "Where a novation occurs, only the new agreement may be enforced." *Id*. Thus, the trial court could have viewed the transaction as involving one agreement that was subsequently modified with the material misrepresentation regarding the Stingray as having occurred in Jefferson County. *Compare Chastain v. Cooper & Reed*, 257 S.W.2d 422, 424 (Tex. 1953) (indicating that where a novation occurs, the doctrine discharges the obligations of the parties under the original agreement so that only their obligations under their new agreement are enforceable).

Proving that a defendant made a misrepresentation involving the transaction on which a deceptive trade practices claim is based is a substantial part of proving claims under the Deceptive Trade Practices Act. *See* Tex. Bus. & Com. Code Ann. § 17.46(b)(7) (West Supp. 2017); *James v. Mazuca & Assocs. v. Schumann*, 82 S.W.3d 90, 95 (Tex. App.—San Antonio 2002, pet. denied) (citing *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995)). On this record, the trial could have reasonably found that Spaulding's actionable misrepresentation, that the Stingray was all original, is a misrepresentation that was made in Jefferson

11

County. *See* Tex. Civ. Prac. & Rem. Code Ann. § 15.064(b) (West 2017) (requiring appellate courts to "consider the entire record, including the trial on the merits[,]" in resolving a party's appeal of a trial court's venue ruling). Because the alleged misrepresentation regarding the Stingray was a substantial part of Sumrall's deceptive trade practices claim, we hold the trial court could reasonably find that venue for that claim was proper in Jefferson County. *See id.* § 15.002(a)(1). Accordingly, we overrule Spaulding's first issue.

## Damages

In issue two, Spaulding argues that insufficient evidence supports the trial court's award of $18,000 to Sumrall for the damages that Sumrall allegedly suffered due to the parties' trade. In his brief, Spaulding argues that Sumrall was the only witness who testified about the Stingray's value, and he claims the testimony before the trial court failed to establish that Sumrall was qualified to express a reliable opinion about the market value of the car that was relevant to proving the car's market value when the trade occurred.

In an appeal, a party's challenge to the legal and factual sufficiency of the evidence proving the party's damages is reviewed based upon established standards. Evidence is legally sufficient to support a factfinder's verdict if the evidence admitted in the trial "would enable reasonable and fair-minded people to reach the

verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). When reviewing the evidence to evaluate if it was sufficient to support the trial court's verdict, "we credit evidence that supports the verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006) (citing *City of Keller*, 168 S.W.3d at 827); *see Am. Interstate Ins. Co. v. Hinson*, 172 S.W.3d 108, 114 (Tex. App.—Beaumont 2005, pet. denied). We sustain legal sufficiency challenges "when, among other things, the evidence offered to establish a vital fact does not exceed a scintilla." *Suberu,* 216 S.W.3d at 793. "Evidence does not exceed a scintilla if it is 'so weak as to do no more than create a mere surmise or suspicion' that the fact exists." *Id.* (quoting *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004)). With respect to a factual sufficiency challenge, we examine the entire record and consider all of the evidence the trial court admitted in the trial to determine whether the finding the appellant challenges in the appeal is so contrary to the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

The trial court relied on the property owner rule when it admitted Sumrall's testimony that he thought an all original 1974 Stingray was worth $32,000. "Generally, a property owner is qualified to testify to the value of [his] property even

13

if [the property owner] is not an expert and would not be qualified to testify to the value of other property." *Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 852-53 (Tex. 2011) (citing *Porras v. Craig,* 675 S.W.2d 503, 504 (Tex. 1984), *abrogated in part on other grounds by Gilbert Wheeler, Inc. v. Enbridge Pipelines (E. Tex.), L.P.*, 449 S.W.3d 474, 483 (Tex. 2014)). "The rule is based on the presumption that an owner will be familiar with [his] own property and know its value." *Reid Rd.,* 337 S.W.3d at 852-53 (citing *Porras*, 675 S.W.2d at 504). Approximately ten years ago, this Court explained that "[w]hen the owner is familiar with his property's value, 'the owner of the property can testify to its market value, even if he could not qualify to testify about the value of like property belonging to someone else.'" *Royce Homes, L.P. v. Humphrey*, 244 S.W.3d 570, 579-80 (Tex. App.—Beaumont 2008, pet. denied) (citing *Porras,* 675 S.W.2d at 504).

In this case, Sumrall was required to prove what the Stingray was worth when he made his trade, not when he later sold the car. And, even if Sumrall became the property owner immediately after the trade occurred, if the testimony shows that the owner's opinion about the value of his property is speculative, it will be deemed to be insufficient to support a damages award. *See Royce Homes*, 244 S.W.3d at 580. While a property owner is entitled to testify to the value of his property, lay opinions

14

regarding value are not sufficient to establish an item's market value if the record shows that the owner's opinion was speculative. *Id*.

Assuming without deciding that the property owner rule applies to Sumrall's testimony,[3] an owner's testimony about an item's market value does not automatically mean that the owner's opinion is competent to prove the item's market value. *See Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 156 (Tex. 2012). Instead, the record must establish that the owner's opinion about the item's market value meets the "'same requirements as any other opinion evidence.'" *Id*. (quoting *Porras*, 675 S.W.2d at 504).

In his brief, Spaulding argues that Sumrall's testimony does not support the trial court's damage award because Sumrall's testimony reflects that he could not

---

[3] Sumrall did not own the Stingray until after the parties completed their trade, and the issue on which his damages were based concerned the Stingray's value when the trade occurred; i.e., when Sumrall became the Stingray's owner. Our review of the record does not show that Sumrall ever provided the trial court with any legal authority for the proposition that a purchaser is presumed to know the value of the property he has purchased on the date he acquired the property, and the presumption that an owner knows the value of his property is presumably based on the concept that owners of property are familiar with their property's value because they have held the property for the length of time needed to become acquainted with the value of the property they own. While we doubt the property owner rule applied under the circumstances in this case, Spaulding neither argued at trial nor on appeal that Sumrall's testimony was inadmissible because Sumrall, although the purchaser of the property, had not owned it for a sufficient period of time when the trade occurred to infer that he knew the car's value.

"differentiate between different value-enhancing or value-diminishing characteristics" regarding Stingrays. Our review of the testimony reflects that Sumrall acknowledged that he did not know if the addition of an aftermarket, unoriginal part would diminish a collectable car's value. Additionally, the evidence from the trial shows that Sumrall did not know how to determine how a car was originally equipped by looking at information readily available by using the car's VIN. Moreover, Sumrall's testimony in the case specifically shows how he determined the Stingray's value. According to Sumrall, after looking on the internet to see what prices were listed on cars similar to the car he thought he got from Spaulding, he decided to ask $32,000 for the Stingray. Our review of the testimony in the trial further reflects that no one other than Sumrall addressed the value of a 1974 Stingray, equipped with an original, 454-cubic-inch engine like the one Sumrall thought he acquired in the trade.

In determining the value of a car, a car's owner does not become an expert on the car's value solely by relying on online advertising to demonstrate his familiarity with the *market value* of his property. *See Balderas-Ramirez v. Felder*, 537 S.W.3d 625, 633 (Tex. App.—Austin 2017, pet. denied) (explaining that the asking prices for cars advertised on the internet, as opposed to the prices for which the cars were actually sold, provided no basis for a witness's opinion regarding her car's market

16

value). Generally, asking prices for property are not relevant to determining what the item's *market value* is since an item's *market value* is "'the price the property will bring when offered for sale by one who desires to sell, but is not obliged to sell, and is bought by one who desires to buy, but is under no necessity of buying.'" *PlainsCapital Bank v. Martin*, 459 S.W.3d 550, 556 (Tex. 2015) (quoting *City of Harlingen v. Estate of Sharboneau*, 48 S.W.3d 177, 182 (Tex. 2001)).

Under Texas law, the testimony of a property owner regarding the item's value is the functional equivalent of expert testimony. *Justiss*, 397 S.W.3d at 159. As such, the testimony of a property owner is judged using the same standards that apply to the testimony of experts. *Id*. Because the record shows that Sumrall did not have the expertise to provide the trial court with a reliable opinion regarding the market value of a 1974 original Stingray, equipped with a 454-cubic-inch engine, his testimony that the car was worth $32,000 is legally insufficient to support the trial court's damage award.

Generally, when an appellate court sustains a party's legal sufficiency challenge in an appeal, the court must then render judgment against the party that bore the burden of proof at the trial. *Id*. at 162. In this case, Sumrall bore the burden of proving the damages caused by the trade. Additionally, we note that Sumrall's brief completely failed to include any response to Spaulding's arguments that

17

Sumrall's testimony offered no evidence to support the trial court's damage award. Because Sumrall failed to present any reliable evidence to prove the amount of the damages he suffered from the trade that he made with Spaulding, we conclude the general rule must be followed. *Id*. Therefore, we reverse the trial court's judgment and render judgment that Sumrall take nothing on his claims.[4] *See* Tex. R. App. P. 43.3.

Counterclaim

In his third issue, Spaulding complains that the trial court erred when it refused to find in his favor on his counterclaim alleging that Sumrall had misrepresented the catamaran as having an original manufacturer's warranty. According to Spaulding, the ruling the trial court made on his counterclaim is contrary to the great weight and preponderance of the evidence.

"When a party attacks the factual sufficiency of an adverse finding on an issue on which [the party] has the burden of proof, [the party] must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983)). Challenges to the legal

---

[4] Given our conclusion that legally insufficient evidence was admitted in the trial to support the trial court's judgment, we need not address Spaulding's argument that this same evidence is also factually insufficient to support the trial court's award.

sufficiency of the evidence are either "no evidence" challenges or "matter of law" challenges, depending on which party had the burden of proof on the matter during the trial. *Raw Hide Oil & Gas, Inc. v. Maxus Expl. Co.*, 766 S.W.2d 264, 275 (Tex. App.—Amarillo 1988, writ denied). If a party attacks the legal sufficiency of the evidence supporting an adverse finding on an issue for which it did not have the burden of proof, the party must, on appeal, show that no evidence supports the trial court's finding. *Croucher*, 660 S.W.2d at 58; *Christus St. Mary Hosp. v. O'Banion*, 227 S.W.3d 868, 873 (Tex. App.—Beaumont 2007, pet. denied). In reviewing a party's factual sufficiency challenge to a finding on which that party had the burden of proof, we "set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Royce Homes*, 244 S.W.3d at 575 (quoting *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)). As long as the evidence falls within the zone of reasonable disagreement, we cannot substitute our judgment for that of the fact finder. *City of Keller*, 168 S.W.3d at 822.

According to Spaulding, after acquiring the catamaran, he tried to activate the warranty. At that point, he learned that the catamaran was still registered to the boat's original owner and that Sumrall had never registered it. Spaulding then explained that the catamaran's manufacturer advised him that the catamaran had a transferrable warranty that could be purchased for approximately $1,300, but that the warranty

19

was unavailable if the boat had changed hands more than once. Additionally, Spaulding stated that he got the company that manufactured the catamaran's motors to honor the warranty on the motors because Sumrall had never registered his ownership of the catamaran with the manufacturer.

A copy of the catamaran's warranty was also admitted into evidence in the trial. With respect to the language regarding a transfer of the warranty, the agreement states:

> **7. <u>Single Transferability of Warranty</u>**. This limited warranty may be transferred once to a subsequent purchaser of the boat during the first five (5) years of the warranty period, provided that such subsequent purchaser pays the required transfer fee [to the entity that manufactured the boat's hull] and registers his ownership with [the entity that manufactured the boat's hull] within thirty (30) days of such purchase. After transfer, this warranty shall be in effect for the remainder of its original term.

The evidence before the trial court reflects that Sumrall disputed Spaulding's characterization of what he said about the catamaran's warranty when they were discussing the trade. During the trial, Sumrall testified that he thought the boat had a "transferrable warranty…10 or 15 year boat warranty[,]" and that he relayed that information to Spaulding when Spaulding purchased the boat. Given Spaulding's testimony that Sumrall never arranged to transfer the warranty on the catamaran, the trial court could have reasonably concluded that Spaulding could have arranged to have the warranty transferred by paying the $1,300 to activate the warranty on the

20

catamaran. Therefore, the trial court could have reasonably determined based on the testimony and evidence before it that Sumrall's representation regarding the availability of a warranty was not knowingly false.

When reviewing a challenge attacking the trial court's findings regarding disputed facts, an appellate court is not to substitute its judgment for that of the factfinder "so long as the evidence falls within this zone of reasonable disagreement." *City of Keller*, 168 S.W.3d at 822. We are also not authorized to ignore a trial court's findings unless the evidence admitted during the trial establishes that the trial court's findings were so contrary to the evidence that the trial court's resolution of the matter should be set aside because it was "clearly wrong and unjust." *Dow Chem. Co.*, 46 S.W.3d at 242 (citing *Pool*, 715 S.W.2d at 635).

On this record, whether the catamaran had transferable warranties when Spaulding acquired the catamaran was in dispute. As the factfinder, the trial court could have reasonably concluded that Sumrall did not knowingly misrepresent that warranties were still available. For these reasons, we hold that Spaulding is not entitled to another trial based on the counterclaim he filed against Sumrall. *See City of Keller*, 168 S.W.3d at 822. Spaulding's third issue is overruled.

21

## Conclusion

We conclude that Sumrall failed to introduce legally sufficient evidence to establish the amount of the damages he suffered due to the trade that he made with Spaulding. We further conclude the evidence allowed the trial court to determine that Jefferson County was a county of proper venue for Sumrall's deceptive trade practices claim. Finally, we conclude that the trial court's ruling on Spaulding's counterclaim is not inconsistent with the greater weight and preponderance of the evidence admitted in the trial. Accordingly, the trial court's judgment is reversed and judgment rendered in Spaulding's favor that Sumrall recover nothing on his claims.

AFFIMRED IN PART, REVERSED AND RENDERED IN PART.

_____
HOLLIS HORTON
Justice

Submitted on March 13, 2018
Opinion Delivered May 24, 2018

Before McKeithen, C.J., Horton and Johnson, JJ.

22