In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-20-00040-CV
_____

KYLE M. JAEGER AND JAEGER REO HOLDING TRUST,
Appellant

V.

SCOTT BROWN, Appellee

On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 18-05-06244-CV

MEMORANDUM OPINION

Kyle M. Jaeger and the Jaeger Reo Holding Trust (Jaeger Reo Holding Trust or the REO Trust) appeal from a no-answer default judgment that involves two written agreements. Under the first of the two agreements, Jaeger and the REO Trust agreed to purchase a 7.5-acre tract from the plaintiff, Scott Brown, for $450,000. In the other, Brown agreed to accept $92,250 in partial payment toward the $450,000 that

1

Jaeger and the REO Trust agreed to pay him for his tract. In its judgment, the trial court awarded Brown $491,750 in economic damages, $983,500 in punitive damages, and $13,499 in attorney's fees plus prejudgment and post-judgment interest.[1]

In six appellate issues, Jaeger and REO Trust argue the trial court erred in denying their post-judgment motion to set aside the judgment that Brown obtained after Jaeger and the REO Trust failed to appear or to answer in response to Brown's suit. In their brief, Jaeger and the REO Trust argue: (1) the post-judgment motion adequately explained why Jaeger and the REO Trust failed to appear when the trial court called the case for trial; (2) in the default-judgment hearing where the trial court awarded Brown damages, Brown failed to establish a prima facie case on the claims raised in his petition; (3) the amounts the trial court awarded in its judgment are "constitutionally and statutorily infirm" and excessive; (4) the trial court erred by allowing Brown to recover multiple times for what the appellants contend is but a single injury; (5) the officer's return on the citation for the defendant, the Jaeger Reo Holding

---

[1]The record shows that Brown was represented by counsel in the trial court. Brown, however, did not file a brief in the appeal.

2

Trust, does not show the process server served it with the citation of service in Brown's suit; and (6) the evidence is insufficient to support the attorney's fees awarded to Brown.

We conclude the appellants' arguments challenging the trial court's decision granting the default (in contrast to their arguments challenging the amounts of the awards) lack merit. Still, because the evidence is factually insufficient to support the amounts the trial court awarded Brown in economic damages, punitive damages, and attorney's fees, so we sustain in part the arguments the appellants raise in issues four and six.

Even though we have found the evidence is factually insufficient to support the awards, we conclude that two of the awards in the judgment can still be affirmed if Brown agrees to accept a remittitur of some of the trial court's economic and punitive damages awards. If Brown were to accept the remittiturs, as suggested below, the economic damages award would be reduced to $409,250 and the punitive damages award would be reduced to $818,500. But as attorney's fees, the record contains factually insufficient evidence to support the trial court's award of a reasonable fee.

Given the above, should Brown accept the suggested remittiturs, we will remand the case to the trial court for a new trial solely on the issue of attorney's fees. If not, we will reverse the judgment and remand the case to the trial court for a new trial to redetermine all of Brown's damages.[2]

## Background

Since Jaeger and the REO Trust failed to answer, the allegations in Brown's pleadings were undisputed. Thus, the facts we describe here have been taken from Brown's pleadings or from the evidence in the hearing the trial court conducted after defaulting the defendants for failing to answer and appear. The trial court conducted the hearing on Brown's damages in November 2019, allowing Brown to present evidence to prove the amount of his damages based on the six causes of action he brought against them in his petition.

The dispute between the parties involves a 7.5-acre tract of real property in Conroe, Texas. In September 2017, Brown agreed to sell the tract to Jaeger and the REO Trust. The parties signed a "Real Estate Purchase Agreement" to convey the tract. Under the Agreement, which

---

[2]*Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992).

Jaeger drafted, Brown agreed to sell Jaeger and the Trust the 7.5-acre tract for $92,250, with the understanding that Jaeger and the Trust would purchase the structures on the tract for $357,750 on a later (but undesignated) date—when Jaeger and the Trust sold a home they owned in Spring. As to the structures on Brown's tract, the Agreement states: "THIS AGREEMENT IS FOR THE LAND ONLY, THE STRUCTURES WILL BE PURCHASED SEPERATELY FOR THE TOT[A]L[] OF $357,750, FOLLOWING THE SALE OF [a house Jaeger and the Trust own in Spring]." As to the dirt comprising Brown's 7.5-acre tract, Jaeger and the Trust agreed to pay $92,250 when they closed, which under the Agreement was scheduled to occur in two days.

Jaeger attached a "Special Warranty Deed" to the Agreement, which Jaeger signed the same day he signed the Agreement (September 13, 2017). Even though the Agreement states the parties were to close the transaction on Brown's tract on September 15, the parties signed a second agreement that same day. In the second agreement, Jaeger offered (and Brown accepted) Jaeger's and the REO Trust's offer to exchange five vehicles and cash in place of the promise in the Agreement where Jaeger and the REO Trust agreed to pay Brown $92,250 in cash.

5

The parties memorialized that second agreement in a "Bill of Sale." The five vehicles, which are listed and valued separately in the Bill of Sale, have a total value of $60,500. And according to Brown, he was to receive $31,750 in cash in addition to the five vehicles under the agreement the parties reached in the Bill of Sale.[3]

On September 13, 2017, Brown delivered a "Special Warranty Deed" to Jaeger. The deed is silent about the future payment that are referred to in the Real Estate Purchase Agreement; instead, the Special Warranty deed, which Brown testified Jaeger also drafted, recites that Brown sold the tract to Jaeger and the REO Trust for $92,250. After Brown delivered the deed, Jaeger and the Jaeger Trust, according to Brown, recorded the deed and "assumed possession" of the 7.5-acre tract.

---

[3]Under the description of the various items of property that Brown was getting as the "BUYER" in the Bill of Sale, the cash term states: "CASH TO SELLER $31,750." During the November 2019 hearing the trial court conducted on Brown's damages, Brown testified the Bill of Sale should have stated "cash to buyer," not "cash to seller." Brown explained that where the Bill of Sale states, "CASH TO SELLER," the description is "an error[.]" Even though the parties did not ask the trial court to provide them with written findings, the trial court's judgment reflects that it apparently found the parties intended the Bill of Sale to read CASH TO BUYER rather than CASH to SELLER, meaning Brown was to receive $31,750 in the transaction described in the Bill of Sale. And given the context of the language in the Bill of Sale, the trial court's construction of the contract given Brown's testimony appears reasonable.

6

After recording the deed, Jaeger and the REO Trust mortgaged the tract and then, according to Brown, "convey[ed] it to a third party."

For his part, Brown took possession of the vehicles described in the Bill of Sale. But soon after he took possession of the vehicles, Brown learned that one of them, a diesel truck, had been reported by its owner as stolen. Jaeger also never gave Brown the $31,750 cash that Brown said Jaeger agreed to pay under the terms of the Bill of Sale. Instead, on September 20, 2017, Jaeger gave Brown a check for $18,125. But when Brown tried to negotiate the check, it bounced. And as to the remaining four vehicles, Brown testified that Jaeger stole one of them, a gas-fueled truck. Brown identified the truck he claimed Jaeger stole from him as truck number 1222 in the Bill of Sale. The dollar amount listed by truck number 1222 in the Bill of Sale is $10,250. And the dollar value listed beside the truck that Brown said was reported stolen in the Bill of Sale, which Brown explained was a truck to which Jaeger could not deliver a good title, is $9,500.

In early January 2018, Jaeger and the REO Trust sold the 7.5-acre tract to Glen and Margaret Adams. According to Brown, since there were concerns with the Special Warranty Deed that Brown signed, Jaeger

7

forged Brown's name to a "Correction General Warranty Deed," dated December 29, 2017. The Correction General Warranty Deed was introduced and admitted into evidence in the hearing. In January 2018, Jaeger recorded the Correction General Warranty Deed, which Brown said he never signed, in Montgomery County. Then, Jaeger and the REO Trust used the Correction General Warranty Deed and the Special Warranty Deed to convey the 7.5-acre tract to the Adams.

In May 2018, Brown sued Jaeger individually and in his capacity as the trustee of the REO Trust, claiming they defrauded him of his 7.5-acre tract. Brown's petition takes a shotgun approach in pleading Brown's claims: he pleads multiple causes of actions, but all of them focus on his loss of his 7.5-acre tract. Essentially, Brown alleged that Jaeger and the REO Trust purchased the property for $92,250 with the understanding that they would purchase the structures later for $357,750 after selling some property they owned in Spring. Brown claimed Jaeger and the REO Trust never intended to honor their promises when they made them and then breached the Agreement by failing to "make payment in full" as the contract required.

Besides suing Jaeger and the REO Trust for breaching the contract, Brown alleged they committed fraud and negligently represented facts involving a transaction that involved real estate, leading him into signing an agreement he never would have signed had the misrepresentations not been made. Along with these claims, Brown included claims for conversion, statutory fraud in a real-estate transaction, and a claim for unjust enrichment. And along with naming Jaeger and the REO Trust as parties, Brown sued Glen and Margaret Adams, the individuals in possession of his 7.5-acre tract. He alleged they acquired the tract through Jaeger's "false deed[.]" As to the Adams, Brown asked the trial court to award him title and possession to the 7.5-acre tract.

Around six months before Brown moved to default Jaeger and the REO Trust, the trial court granted the Adams' motion for summary judgment against Brown. Brown did not appeal from the trial court's order granting the Adams' motion, and the Adams are not parties to the appeal.[4]

---

[4]About six months before it signed the final judgment, the trial court granted Glen and Margaret Adams' Motion for Summary Judgment. The order the trial court signed granting the Adams' motion for summary judgment did not sever Brown's claims against the Adams

9

As to Jaeger and the Trust, the record shows that in June 2018, Jaeger was personally served with citation in his individual capacity and in his capacity as trustee. But as to the REO Trust, the process server wrote on the return that he served "Jaeger Holding Trust" rather than writing that he served Jaeger REO Holding Trust, the entity named in the suit. Despite the way the officer wrote the name on the return, the citation shows the process server served the Jaeger Reo Holding Trust by serving its Trustee, Kyle M. Jaeger, "personal[ly], by hand[.]"

In November 2019, the trial court called the case to trial. Jaeger and the Trust failed to appear. Brown's attorney moved to default them

into a separate suit. That said, the final judgment the trial court signed includes the following language: "all relief not granted is hereby denied." Based on the language the trial court used in the judgment and the record before us, we believe the trial court probably intended the judgment to be final even though it never mentions Brown's claims against the Adams. The judgment at issue in the appeal did not result from a conventional trial on the merits, so the presumption of finality that applies to conventional trials does not apply here. And the language the trial court used is not a traditional Mother Hubbard Clause, since such clauses generally include language signifying the judgment is final, disposes of all claims and parties, and is appealable. *See In the Interest of R.R.K.*, 590 S.W.3d 535, 543 (Tex. 2019); *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 206 (Tex. 2001). Still, even though this judgment lacks the language like that often used to indicate finality, it appears the trial court probably intended its judgment to be final. The appellants have not argued it is not, and we have construed it as a final judgment for the purposes of the appeal.

10

for failing to file an answer and for failing to appear. The trial court granted Brown's request on both grounds. That same day, the trial court conducted an evidentiary hearing to determine how much to award Brown on his claims.

Two witnesses, Brown and his attorney, testified in the hearing. After considering the evidence and Brown's pleadings, the trial court signed a judgment awarding Brown $491,750 in economic damages, $983,500 in punitive damages, and $13,499 in attorney's fees. The trial court did not require Brown to elect one theory of recovery and allowed him to recover on all six theories: the judgment recites Jaeger and the REO Trust are liable "for breach of contract, fraud, negligent misrepresentation, conversion, statutory real estate fraud and unjust enrichment."

Less than two weeks later, Jaeger (appearing pro se) used a preprinted form and moved to set aside the final judgment. The box Jaeger checked on the form reflects that Jaeger asked the trial court to set aside the final judgment due to an alleged "Lack of Notice." Under that box, Jaeger checked another box on the form that states: "I did not file an answer because I was not properly served with citation." Several

lines beneath that box allow an individual filling out the form to explain why they failed to appear or to answer a suit. On these lines, Jaeger wrote: "I was not served for this court date. Also I was incarcerated from August 2018 until November 26, 2019. My release came 6 days after this court date for which I was never served."

Except for Jaeger's complaint that he was not "properly served with citation," Jaeger's post-judgment motion raises no other complaints about the trial court's ruling granting the judgment by default. For instance, in several locations on the form Jaeger could have challenged the judgment for other reasons than lack of proper service. One of these allows a person to explain whether they have a "meritorious (good) defense to this case." Lines below that box allow the person to explain their defense. Jaeger left lines and boxes like those providing other excuses for not appearing blank.

On December 20, 2019, the trial court conducted a hearing on Jaeger's motion. A docket entry in the trial court's docket sheet on December 20 shows that Jaeger, Brown and Brown's attorney were present for the hearing. While the docket sheet reflects the trial court denied Jaeger's motion, the appellate record lacks a written order on

Jaeger's post-judgment motion. Since the record lacks a written order, by rule, Jaeger's motion was overruled by operation of law.[5]

After Jaeger appealed, his attorney asked the court reporter to prepare a transcript from the November 2019 hearing. But Jaeger's attorney did not ask the reporter for a transcript of the hearing the trial court conducted in December on the motion Jaeger filed to set the default judgment aside. For that reason, the appellate record is incomplete since it lacks a reporter's record of the December hearing on Jaeger's post-judgment motion to set aside the judgment. Without a record from the December hearing, we must presume the evidence from the hearing supports the trial court's decision to overrule Jaeger's and the REO

---

[5]"A trial judge's oral pronouncement granting a motion for new trial or motion to modify, reform, or correct a judgment and a docket entry indicating that such motion was granted cannot substitute for a written order required by Rule 329b." *Faulkner v. Culver*, 851 S.W.2d 187, 188 (Tex. 1993). Regardless of the trial court's failure to sign a written order denying Jaeger's motion, his motion was overruled by operation of law seventy-five days after the trial court signed the judgment. Tex. R. Civ. P. 329b(c). That said, the better practice would be for trial courts to memorialize their rulings on post-judgment motions with written orders since we are unable to accept their oral pronouncements on post-judgment motions in hearings as the equivalent of a ruling.

Trust's post-judgment motion claiming they weren't properly served, even though their motion was overruled by operation of law.[6]

## Standard of Review

In general, rulings denying a party's motion for new trial are reviewed for abuse of discretion.[7] A trial court cannot grant a default judgment against a defendant that will be upheld on appeal unless the record shows the defendant was properly served with the plaintiff's suit.[8] In a direct appeal from a judgment the plaintiff obtained by default, there is no presumption of proper service.[9] That said, the certificate or affidavit of service from the process server who served the defendant with process is prima facie evidence of the fact the defendant was served, and the "recitals in a process server's return create[] a presumption that service was performed."[10] Without a presumption favoring proper service, Texas

---

[6]*See Bennett v. Cochran*, 96 S.W.3d 227, 229 (Tex. 2002) (per curiam) (explaining that the Texas Rules of Appellate Procedure require the reviewing court to presume the omitted portions of the reporter's record support the trial court's findings).

[7]Dir., State Employees Workers' Comp. Div. v. Evans, 889 S.W.2d 266, 268 (Tex. 1994).

[8]Tex. R. Civ. P. 124.

[9]*See Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994) (per curiam).

[10]*Sozanski v. Plesh*, 394 S.W.3d 601, 604 (Tex. App.—Houston [1st Dist.] 2012, no pet.).

law requires that the record show the party who filed the suit complied with the Rules of Procedure, as it is those rules that control the manner defendants are to be served and that control when trial courts may grant a judgment by default.[11]

Here, the post-judgment motion that Jaeger signed asked the trial court to set aside the judgment for one reason—Jaeger claimed the defendants were not "properly served with citation" in the suit. To obtain a new trial, the party who has been defaulted must establish all of the following: "(1) the failure to appear was not intentional or the result of conscious indifference, but was the result of an accident or mistake, (2) the motion for new trial sets up a meritorious defense, and (3) granting the motion will occasion no delay or otherwise injure the plaintiff."[12] When the motion satisfies these requirements, the trial court must grant the motion.[13]

As mentioned, the post-judgment motion Jaeger signed does not argue the defendant had meritorious defenses to Brown's claims. And

---

[11]*Id.*

[12]*Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 925 (Tex. 2009) (citing *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939)).

[13]*Strackbein v. Prewitt*, 671 S.W.2d 37, 39 (Tex. 1984).

had the motion included additional arguments like that, there should also have been facts alleged in the motion to support any additional defenses. When Jaeger appeared for the December hearing on his motion, he was required to provide the trial court with evidence establishing that he had a meritorious defense.[14] On this record, we must presume that Jaeger, on behalf of himself and for the REO Trust, failed to do so.

Analysis

*Liability Issues*

Were Jaeger and the REO Trust to prevail on their first and fifth issues, they would be entitled to a new trial requiring a factfinder to decide whether they are liable to Brown on his claims. Since these issues involve their liability to Brown, not just the damages Brown recovered, we start with issues one and five. In Jaeger's first issue, he argues the trial court should have granted his motion for new trial because he provided the trial court with an adequate explanation for his and the REO Trust's failure to appear in response to Brown's suit.

In Jaeger's post-judgment motion, he alleged that Brown failed to properly serve him with the suit. But the return of service that the

---

[14]*See Ivy v. Carrell*, 407 S.W.2d 212, 214-215 (Tex. 1966).

process server signed, which was filed of record, shows the process server personally handed Jaeger "a true copy of the citation with the date of delivery endorsed, together with the accompanying copy of the Plaintiff's Original Petition[.]" According to the information in the return, Jaeger was served with process at a jail on Criminal Justice Drive in Montgomery County. The return shows it was filed with the District Clerk's Office on July 27, 2018. Thus, documents in the Clerk's Record show that Jaeger was personally served with the citation and the petition. And the record shows the return of citation was filed with the District Clerk's Office for more than ten days before the default judgment was signed.[15]

On appeal, Jaeger argues for the first time there are reasons that excuse his failure to answer and appear that are not raised in his post-judgment motion. He notes the trial court dismissed the case before granting the judgment by default but then reinstated the case on the docket. He claims that as a result, he thought the case was dismissed and contends that's why he failed to appear. But that's not the argument he raised in his post-judgment motion. Instead, his motion alleged one

---

[15]*See* Tex. R. Civ. P. 107.

claim, which was that he failed to appear because he "was not properly served with citation." And since Jaeger failed to obtain a reporter's record from the December hearing the trial court conducted on his post-judgment motion, we must presume that whatever occurred in the December hearing does not support the argument he raises for the first time in his appeal. To the contrary, even if the trial court allowed Jaeger to present evidence on a matter he failed to raise in his post-judgment motion (which we doubt), we must presume that whatever the evidence he presented allowed the trial court to find that Jaeger's failure to answer and to appear was nonetheless still intentional, resulted from his conscious indifference, and that his failure to answer or to appear was not the result of an accident or a mistake.[16] Assuming the trial court heard evidence in the December hearing, those questions were then decided and resolved as questions of fact.[17] As the factfinder, the trial court had the right to believe all, some, or none of the testimony presented to it in the hearing.[18]

---

[16]*Id*. 324(b)(1).

[17]*Pekar v. Pekar*, No. 09-14-00464-CV, 2016 Tex. App. LEXIS 600, at *10 (Tex. App.—Beaumont Jan. 21, 2016, no pet.).

[18]*Id*.

When considering the foregoing rules, Jaeger and the REO Trust failed to discharge their burden of both pleading and setting up in the hearing facts sufficient to establish that they have a meritorious defense to Brown's suit.[19] We overrule appellants' first issue.

In issue five, REO Trust takes a slightly different tack. According to the appellants, the return tied to the citation served on the REO Trust is insufficient to show that the "Jaeger REO Holding Trust" is the entity the process server served with the citation.

The return shows the process server served the citation and petition on "Trustee Kyle M. Jaeger[.]" The typewritten portion of the citation is addressed to "Jaeger Reo Holding Trust." In addition, the "Jaeger Reo Holding Trust" is the name found typed on the return. Despite the names typed on the return, on the line where the process server wrote the person whom he served, he wrote: "Jaeger Holding Trust" rather than writing Jaeger Reo Holding Trust. Although the process server should have written the name on the return in the way the name is identified in the citation, he did not do so.

---

[19]*Lerma,* 288 S.W.3d at 926.

The appellants argue that because the return is not signed in the exact same way as the citation is addressed, the trial court erred in granting Brown's request to default Brown. According to the appellants, the trial court should have refused Brown's request because the record then before the trial court when Brown moved for the default did not affirmatively demonstrate that Brown had obtained proper service of the suit on Jaeger Reo Holding Trust.

We disagree. The variance the appellants rely on simply doesn't show that Jaeger, as the trustee of the REO Trust, was not served with the citation or the petition in his capacity as trustee for the Jaeger Reo Holding Trust. Instead, while it's true the process server failed to write the REO Trust's name down exactly in the way it's typed in the citation, the discrepancy the appellants point to does not show that Jaeger was misled, meaning that Jaeger did not know the Jaeger Reo Holding Trust was being served with the suit.

When Jaeger was in the trial court, the post-judgment motion he filed never set up a claim that he was confused about whether Brown was suing the Jaeger Reo Holding Trust when the process server served him with the suit. In fact, there's no evidence that noted or saw the way the

process server signed the return, and no evidence showing that the way the return was signed caused Jaeger to be confused about whether the Jaeger Reo Holding Trust, who is the named party in the petition, was being sued. And since we don't have a transcript of the hearing the trial court conducted, the record does not show the appellants raised this claim in the trial court.[20]

The citation with which Jaeger was served for the REO Trust commanded "Jaeger REO Holding Trust" to file "a written answer to the petition" on the Monday following twenty days of the date Jaeger was served. As we've mentioned, we must presume that any evidence the trial court admitted in the hearing it conducted on Jaeger's post-judgment motion established that Jaeger was not misled by any discrepancy in the return.[21] Because the arguments Jaeger and the REO Trust raise in their first and fifth issues were either not properly preserved, or they lack merit, the issues are overruled.

---

[20]*See Lerma*, 288 S.W.3d at 925; Tex. R. Civ. P. 324(b)(1).

[21]*See Bennett*, 96 S.W.3d at 229; *Williams v. Williams*, 150 S.W.3d 436, 445 (Tex. App.—Austin 2004, pet. denied).

*Multiple Claims Without an Election*

In issues two and four, the appellants complain the trial court erred in allowing Brown to recover against them on all six of his claims. In issue two, Jaeger and the REO Trust complain that Brown failed to establish a prima facie case on any of his six claims. Texas follows the one-satisfaction rule, so when the plaintiff sues the defendant under multiple theories of liability, the plaintiff is entitled to only one recovery for the damages caused by a particular injury.[22]

When a trial court grants a default judgment on an unliquidated claim, "all allegations of fact set forth in the petition are deemed admitted, except the amount of damages."[23] So the "default judgment admits that the defendant's conduct caused the event upon which the plaintiff's suit is based."[24] Damages are considered unliquidated when they are not proven by an instrument in writing.[25] On the other hand, if the claim "is liquidated and proved by an instrument in writing, the

---

[22]*See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 303 (Tex. 2006).

[23]*Heine*, 835 S.W.2d at 83.

[24]*Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 732 (Tex. 1984).

[25]Tex. R. Civ. P. 243.

damages shall be assessed by the court[.]"[26] A claim is liquidated when the damages can be accurately calculated based on the allegations of fact in the petition and the written instrument before the court.[27]

The appellants argue that Brown failed to include sufficient facts in his petition to support a judgment by default. And to obtain a judgment by default, the plaintiff must allege sufficient facts in the petition to state a cause of action.[28]

In Texas, courts follow a "fair notice" standard, "which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant."[29] Thus, "[m]ere formalities, minor defects, and technical insufficiencies will not invalidate a default judgment where the petition

---

[26]*Id.* 241.

[27]*Oliphant Fin., LLC v. Galaviz*, 299 S.W.3d 829, 836 (Tex. App.—Dallas 2009, no pet.); *Freeman v. Leasing Associates, Inc.*, 503 S.W.2d 406, 408 (Tex. App.—Houston [14th Dist.] 1973, no pet).

[28]*Fairdale Ltd. v. Sellers,* 651 S.W.2d 725, 725-26 (Tex. 1982) (reversing default judgment where the petition contained no allegation that the defendant owed a duty to the plaintiff or an allegation of breach).

[29]*Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000); *see also* Tex. R. Civ. P. 47(a) (a pleading "shall contain a short statement of the cause of action sufficient to give fair notice of the claim involved").

states a cause of action and gives 'fair notice' to the opposing party of the relief sought."[30]

Brown's petition alleges six claims—a claim for breach of contract, fraud, negligent representation, conversion, statutory real estate fraud, and unjust enrichment. And the petition alleges facts supporting the claims. For example, Brown alleged that Jaeger and the REO Trust breached the Agreement the parties executed in September 2017. And he alleged the defendants never paid the consideration that they agreed to pay for his tract, yet they still filed the deed he signed and conveyed the tract to another. Brown also alleged that Jaeger, individually and as the trustee of the REO Trust, knew the consideration they paid him for the tract "would fail, but [they] induced him to go forward with the agreement anyway." Brown alleged that after Jaeger and the REO Trust assumed possession of the tract and filed the deed, Jaeger forged Brown's name to a correction deed and then used the correction deed to convey the tract to the Adams.

In addition to these general allegations, Brown's petition contains separately numbered paragraphs that he tied to his six claims. In each

---

[30]*Stoner v. Thompson,* 578 S.W.2d 679, 683 (Tex. 1979).

paragraph, Brown alleged even more facts fleshing out the details of his specific claims. All in all, Brown's petition gave Jaeger and the REO Trust fair notice of the nature of his claims, the basic issues in controversy, and the type of testimony they would need to dispute the claims. We overrule the appellants' second issue.

In the appellants' fourth issue, they argue the trial court violated the one-satisfaction rule by allowing Brown to recover multiple times for a single injury. To be clear, the trial court never required Brown to elect the theory on which he wanted to recover his judgment. Even though the trial court's failure to require Brown to elect the theory that afforded him the greatest relief was error, we disagree with the appellants' suggestion that the trial court allowed Brown to recover multiple times for the same injury.

The judgment the trial court signed allows Brown to recover economic damages, punitive damages, and attorney's fees—the theory affording Brown these recoveries is statutory fraud in a transaction that involved real estate, which in this case is Brown's 7.5-acre tract.[31] Under Brown's statutory real estate fraud theory, he had the right to recover

[31]Tex. Bus. & Com. Code Ann. § 27.01.

the three categories of damages the judgment awards—actual damages, exemplary damages, and punitive damages.[32] Additionally, had the appellants viewed the judgment as allowing Brown multiple recoveries for a single injury, the rules of error preservation required them to raise that objection in the trial court to preserve it for their appeal.[33]

Even though we disagree with the appellants' argument claiming the judgment allows Brown multiple recoveries for the same injury, the record also does not show the appellants preserved the argument for appeal.[34] Because the argument has no merit and because it was not properly preserved, the appellants' fourth issue is overruled.

*Form of the Judgment and the Excessiveness of the Awards*

In issue three, the appellants argue the trial court's damages awards are excessive. To start, they complain the judgment is excessive

---

[32]*Id.* § 27.01(b)-(e).

[33]*Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998) (per curiam) (an objection asserting a failure to elect a remedy preserves a complaint that the judgment allowed a double recovery for appeal); *Shell Oil v. Chapman*, 682 S.W.2d 257, 259 (Tex. 1984) (concluding the appellants waived their complaint that a judgment allowed a double recovery when it had not properly preserved the complaint at trial); *see also* Tex. R. App. P. 33.1(a).

[34]*See Thota v. Young*, 366 S.W.3d 678, 698 (Tex. 2012) (cleaned up); *Royce Homes, L.P. v. Humphrey*, 244 S.W.3d 570, 582 (Tex. App.—Beaumont 2008, pet. denied).

because the judgment is joint and several. But the judgment does not use the words *joint and several*. Instead, the judgment recites that it is "against Kyle M. Jaeger and the Jaeger Reo Holding Trust[.]" Whatever the effect of the trial court's use of the conjunction *and* in the judgment, the appellants never complained about the form of the judgment in their post-judgment motion. As a result, Jaeger and the REO Trust failed to preserve their complaint about the form of the judgment for the purpose of their appeal.[35]

Next, relying on section 41.0016 of the Texas Civil Practice and Remedies Code, the appellants suggest the trial court was required to render punitive damages awards "specific as to each defendant[.]"[36] We agree the trial court should have done so since by statute, punitive damages awards must be individualized by defendant.[37] But yet again, the appellants as to their complaint about this error have run afoul of the

---

[35]Tex. R. App. P. 33.1(a); *WCW Int'l, Inc. v. Broussard*, Nos. 14-12-00940-CV, 14-12-01077-CV, 14-12-01139-CV, 2014 Tex. App. LEXIS 5928 (Tex. App.—Houston [14th Dist.] June 3, 2014, pet. denied).

[36]Tex. Civ. Prac. & Rem. Code Ann. § 41.006 (providing that when there are "two or more defendants, an award of exemplary damages must be specific as to a defendant, and each defendant is liable only for the amount of the award made against that defendant").

[37]*Id.*

rules of error preservation. They didn't object to the trial court's failure to make the punitive damages awards specific as to each defendant when they were in the court below so the trial court could have addressed and corrected the error there.[38] We do not reach their complaint because it was waived.[39]

Jaeger and the Trust turn next to the evidence that Brown presented in the hearing in November 2017 to establish the amount of his damages. They note that Brown tied his evidence to a benefit-of-the-bargain measure of loss. Though the appellants argue that under the Agreement, Brown's damages are limited to $92,250 for the 7.5-acre tract, we disagree. The evidence before the trial court in the November hearing supports a larger award based on Brown's loss of his 7.5-acre tract and structures.

Under the parties' Agreement and the evidence presented in the November hearing, the trial court could have reasonably found that Jaeger and the Trust agreed to purchase Brown's tract with the

---

[38]Tex. R. App. P. 33.1(a).
[39]*Id.*; *Horizon Health Corp. v. Acadia Healthcare Co., Inc.*, 520 S.W.3d 848, 881 (Tex. 2017) (applying the preservation-of-error rules to the appellant's argument under section 41.006).

structures on it for $450,000. Even then, however, the evidence in the hearing doesn't support the trial court's $491,750 award.

Even though the evidence doesn't the full amount of the trial court's actual damages award, the evidence Brown presented in the hearing still supports most of it. During the hearing, Brown established the parties signed two agreements in September 2017—the Real Estate Purchase Agreement and the Bill of Sale. The Agreement reflects the parties placed a $450,000 value on the tract including the structures on it, with Brown agreeing to sell the dirt for $92,250 and the structures later for $357,750 when Jaeger and the REO Trust sold some property they owned in Spring.

On the same day the parties signed the Agreement, the parties signed the Bill of Sale. It shows that Brown accepted five vehicles and cash in exchange for the $92,250 cash that Jaeger and the REO Trust were to pay him under the Agreement in partial payment for the dirt under the 7.5-acre tract. In the Bill of Sale, Brown recognized he was giving up the $92,250 that he'd agreed to be paid under the Agreement in return for the vehicles and the payment of $31,750 in the Bill of Sale. And it's clear there was an exchange of consideration between the

29

Agreement and Bill of Sale: The Bill of Sale recites it is "FOR AND IN CONSIDERATION OF the sum of $92,250.00 U.S. Dollars" for Brown's tract. Further, in the November hearing, Brown never testified that after signing the Agreement he and Jaeger agreed to another deal where Jaeger and the REO Trust agreed to purchase his tract for $491,750.

For the reasons explained above, the starting point for calculating Jaeger's damages is $450,000. From that amount, the trial court should have deducted $92,250, the amount Brown acknowledged receiving in the Bill of Sale. Given Brown's testimony in the hearing, the trial court should have then added back to Brown's damages the following items:

1) the $31,750 in cash that Brown said he expected to get but never received from Jaeger under the Bill of Sale;
2) the value of the diesel truck that Brown testified he learned was stolen, a truck the parties valued in the Bill of Sale at $9,500;
3) and the value of the gas-powered truck that Brown said Jaeger stole from his lot, a truck the parties valued in the Bill of Sale at $10,250.[40]

Based on the formula (($450,000-$92,250)+($31,750 + $9,500 + $10,250)) and using the values the parties placed on the real and personal property

---

[40]The truck Brown testified Jaeger stole from him is listed as vehicle number 1222. The truck Brown testified he learned was reported as stolen is listed as truck number 0393 in the Bill of Sale.

in their two written agreements together with the evidence in the November hearing on damages, Brown's economic damages equal $409,250.

The only remaining question is whether other evidence admitted in the hearing supports an economic damages award exceeding $409,250. We conclude the answer is no. To be sure, Brown did have a right to recover more to the extent he proved he suffered additional damages that he tied to his claim for statutory fraud that involved his 7.5-acre tract.[41] But during the hearing, Brown failed to establish any values for any of his other damage claims. So while Brown's petition included claims for other damages, such as damages to Brown's personal property, Brown provided the trial court with no evidence that valued his personal property. And even though Brown could have recovered consequential damages on his claim of statutory fraud, damages that "result naturally, but not necessarily, from the defendant's wrongful acts[,]" Brown provided the trial court with no evidence valuing any consequential damages beyond the damages already included in the $409,250 award.[42]

---

[41]Tex. Bus. & Com. Code Ann. § 27.01(b).

[42]*Arthur Andersen v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997).

31

To be fair, Brown did testify in the November hearing that after Jaeger took his property, he lost "everything[.]" According to Brown, after Jaeger took his land, he became "basically homeless[.]" But Brown never placed a value on any of the personal possessions in his home. And he never placed a fair rental value on a home of similar size or described how long he was homeless.[43] Finally, during the hearing, Brown did not argue he was seeking damages beyond a benefit-of-the bargain loss for his tract. But Brown calculated his "bargain" without subtracting the values of three vehicles he retained. We conclude the evidence supports an economic damages award of $409,250. And we conclude the evidence is factually insufficient to support an award of economic damages exceeding $409,250.

Turning to the trial court's punitive damages award, the trial court awarded Brown punitive damages in an amount of two times its actual damages award. On appeal, Brown complains the award of punitive damages is statutorily and constitutionally excessive. The 2:1 ratio represented by the trial court's award, however, does not exceed the ratio

---

[43]*See Humphrey*, 244 S.W.3d at 580 (concluding the evidence provided by a homeowner was legally insufficient to support an economic damages award when the testimony was "purely speculative").

authorized for punitive damages awards by law.[44] Besides, as the factfinder in the hearing, the trial court could have accepted Brown's testimony about the efforts Jaeger went to deceive him and believed that Jaeger forged Brown's name to a deed and then used it to convey title to an innocent third party, the Adams. The trial court was also entitled to accept Brown's testimony that as a result of Jaeger's acts in inducing him into a real estate contract that he never intended to fulfill, Jaeger left Brown and his children homeless.

In the end, the trial court chose to double the economic damages award. But since we have concluded the economic award is unsupported by factually sufficient evidence, we conclude the exemplary damages award lacks sufficient factual support as well.

To sum up: The trial court's actual damages award is excessive by $82,500 ($491,750-$409,250). Its punitive damages award is excessive by $165,000 ($983,500-$818,500). To the extent Brown argues in his fourth issue that the evidence is factually insufficient to support the trial court's economic and punitive damages awards, issue three is sustained.

---

[44]Tex. Civ. Prac. & Rem. Code Ann. § 41.008(b)(1)(A).

*Attorney's Fees*

In issue six, Jaeger and the REO Trust argue the evidence is insufficient to support the trial court's award of $13,499 in attorney's fees. The record shows that Brown's attorney testified that he spent 49.4 hours prosecuting Brown's case, charged Brown $325 per hour, and that his hourly charge is customary for the services of attorneys in the area who have the experience, reputation and ability similar to his.

Brown had a right to recover attorney's fees against Jaeger and the REO Trust based on his theory that they committed statutory fraud in a transaction involving real estate.[45] To support their argument the attorney's fee award is excessive, the appellants argue that Brown's attorney failed to present evidence segregating his fees between Brown's six claims. But Jaeger failed to point out that problem in his post-judgment motion. Because the appellants never pointed out a fee segregation problem when they were in the trial court, they deprived the

---

[45]Tex. Bus. & Com. Code Ann. § 27.01(e).

trial court of the opportunity to correct the problem and cannot complain of the problem for the first time in their appeal.[46]

Jaeger and the REO Trust also argue that the evidence Brown presented to support the trial court's award is insufficient under the requirements the Texas Supreme Court established in *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469 (Tex. 2019). To be sure, Brown's testimony shows he is not the only person in his firm who worked on Brown's case. Yet when Brown's attorney testified, the attorney failed to provide the trial court with any details or documentation to explain how much time he and others spent on the various tasks that make up what he asked the trial court to award, $13,499. Under *Rohrmoos*, Brown had the burden to provide the trial court with evidence sufficient to permit the trial court to use the lodestar method to calculate a reasonable fee before the trial court could shift the fees Brown incurred to Jaeger and the REO Trust.[47] That required Brown to present evidence proving

---

[46]*Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997); *Home Comfortable Supplies, Inc. v. Cooper*, 544 S.W.3d 899, 908 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

[47]*Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 502 (Tex. 2019); *Eaker v. Mangiameli*, No. 09-19-00340-CV, 2021 Tex. App. LEXIS 8720, at *32-33 (Tex. App.—Beaumont Oct. 28, 2021,

at least (1) what particular services his attorney and the firm performed, (2) who performed those services, (3) around when the services were performed, (4) the reasonable amount of time for performing the services, and (5) the reasonable hourly rate for each person performing such services.[48] The fees that Brown incurred do not themselves establish their reasonableness or necessity.[49]

The testimony and the affidavit that Brown's attorney provided the trial court to address the fees that Brown's firm charged Brown fall far short of the minimum required by *Rohrmoos* to support an attorney's fee award under the lodestar analysis. Brown's attorney testified about his hourly rate and the hourly rate he charged for a law clerk. Yet Brown's attorney never provided any details about what particular services he and his law clerk performed. He also never described when the services were performed. Without this information, the trial court did not have the "starting point" it needed "for determining a lodestar fee award[.]"[50]

---

no pet.); *Shouldice v. Van Hamersveld*, No. 09-18-00355-CV, 2020 Tex. App. LEXIS 622, at *14-15 (Tex. App.—Beaumont Jan. 23, 2020, no pet.).

[48]*Id.* at 498.

[49]*See Milliken v. Turoff*, No. 14-19-00761-CV, 2021 Tex. App. LEXIS 4188, at *5 (Tex. App.—Houston [14th Dist.] May 27, 2021, no pet.).

[50]*Rohrmoos*, 578 S.W.3d at 494.

## Conclusion

Having concluded there is insufficient evidence to support the full amount of the damages the trial court awarded Brown for statutory real estate fraud, we suggest remittiturs of $82,500 of the economic damages award and $165,000 of the punitive damages award.[51] If Brown files remittiturs of those amounts in this Court as suggested within fifteen days of this opinion, then our subsequent judgment will reform the trial court's judgment in accordance with suggested remittiturs. As reformed, we will issue a judgment affirming an economic damages award of $409,250 and a punitive damages award of $818,500.[52]

Further, we have found the evidence factually insufficient to support the trial court's attorney's fee award and concluded the attorney's award is not capable of being reformed by this Court. Instead, that award must be redetermined in the trial court regardless of whether Brown accepts the remittiturs we have suggested above. Accordingly, we

---

[51]*See* Tex. R. App. P. 46.3 ("The court of appeals may suggest a remittitur. If the remittitur is timely filed, the court must reform and affirm the trial court's judgment in accordance with the remittitur. If the remittitur is not timely filed, the court must reverse the trial court's judgment.").

[52]*See id*. 46.3, 46.5.

must render a judgment remanding the case to the trial court for the limited purpose of the trial court conducting further proceedings to determine the amount Brown should recover (if any) in reasonable and necessary attorney's fees. If Brown does not agree to the remittiturs we have suggested, we will reverse the trial court's judgment and remand the case to the trial court so that it may conduct a new trial limited to conducting further proceedings on determining all of Brown's damages.[53]

And finally, having overruled Jaeger's other issues, we affirm the remainder of the trial court's judgment.

AFFIRMED CONDITIONALLY IN PART, REVERSED AND REMANDED IN PART.

_____
HOLLIS HORTON
Justice

Submitted on September 28, 2021
Opinion Delivered August 4, 2022

Before Kreger, Horton and Johnson, JJ.

___

[53]*See Heine*, 835 S.W.2d at 86.